UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL BARRIENTEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:12CV179 HEA |
| | ) | |
| JEFFERSON COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

# OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant Shaun Griggs' Motion for Summary Judgment, [Doc. No. 95] and Defendants Waters, Lehmann and Harster's Motion for Partial Summary Judgment, [Doc. No. 97]. Plaintiff opposes the Motions. For the reasons set forth below, the Motions are granted.

## Facts and Background

On December 9, 2013, the Plaintiff was sentenced in the Jefferson County Circuit Court to a suspended imposition of sentence for the underlying charge.

Plaintiff was arrested on December 25, 2010. On that date, Defendant Griggs was a corporal with the Missouri State Highway Patrol assigned to Troop C as a road officer. Currently, Griggs is a sergeant with the Missouri State Highway Patrol.

Also on December 25, 2010, Defendants Tom Harster, Dan Lehman, and Amy Waters were on duty as Deputies of the Jefferson County Sheriff's Department, and as such, operated in uniform for purposes of conducting routine filed operations and using Jefferson County Sheriff's Department vehicle(s). On December 25, 2010, Defendant Shawn Griggs was on duty as a Trooper of the Missouri State Highway Patrol, and as such, operated in uniform for purposes of conducting routine filed operations and using a Missouri Highway Patrol Department vehicle.

On December 25, 2010, Waters responded to a call of an incident at Thoreau Trail. Waters contacted Harster to assist her on a case. Lehmann and Griggs met up with Waters and Harster. The officers had a briefing as to the reported situation that occurred at Barrientez's residence. All four officers headed to Barrientez's apartment in separate cars. Waters and Lehmann approached Barrientez's front door. Harster and Griggs provided perimeter security support by covering the sliding glass door to the apartment.

A female officer said "sheriff's department" and Barrientez opened his apartment door. Barrientez allowed the officers into his apartment. Waters placed Barrientez in the prone position on the ground. Waters handcuffed Barrientez behind his back and patted him down. After Barrientez was handcuffed, Waters asked where the weapon was located. Plaintiff was not in physical possession of a

weapon and informed Defendants Griggs, Waters, Harster and Lehmann that he did have a rifle and directed the Defendants to his bedroom closet. Lehmann proceeded to retrieve an unloaded .22 caliber rifle and seized same. No ammunition was located at Plaintiff's residence. Additionally, the rifle was inoperable and was incapable of firing a projectile. Plaintiff remained in the prone position throughout the entirety of his encounter with Defendants Griggs, Waters, Harster, and Lehmann.

Waters left the apartment with Barrientez's youngest child. Harster, Lehmann, and Griggs remained inside the apartment with Barrientez. Lehmann and Griggs did a protective sweep of the apartment.

Barrientez believes that there was another officer in the living room area, but does not know who that officer was and does not know if that officer remained in that location.

Harster applied force to Barrientez. During the use of force, Barrientez's head caused damage in the kitchen wall. Harster testified that his action happened "quite fast." Barrientez stated that Harster's application of force was very quick and estimates it was approximately five seconds. During this quick time period, Barrientez did not see any other officers besides Harster. Plaintiff was able to hear other officers present. While on the ground, Barrientez's line of sight was to the front door and everything else was out of his line of sight. Lehmann and Griggs

testified that they were not in the room when Barrientez allegedly resisted. Griggs has testified that he did not see any act of physical force used on Barrientez. Lehmann and Waters have testified that they were not in the room when the incident occurred.

Harster brought Barrientez to a standing position in the kitchen. When Barrientez first stood up, he saw Harster and another Jefferson County officer. When Griggs returned to the area, he saw Barrientez bleeding from his nose and saw some damage to a nearby wall. Waters escorted Barrientez and everyone left the apartment.

Barrientez admits that Griggs did not touch him. Barrientez admits that he did not have any problem with the actions of Griggs. Griggs did not have any verbal or physical contact with Barrientez during the incident leading to his arrest.

An ambulance arrived to render medical treatment to Barrientez, and he was transported to the hospital via Waters' patrol car.

At the time of this incident, Plaintiff was recovering from significant cancer treatment to include multiple skin grafts, bone removal and prosthetic replacement of portions of his skull and facial structure. Plaintiff asked Defendant Harster whether he was put into prone position and arrested immediately upon entry due to his Mexican ethnicity. Defendant Lehmann refuted this assumption directly to Plaintiff. Plaintiff inquired another time as to why he was put in the prone position.

Defendant Harster became agitated and insinuated in a sarcastic fashion that Plaintiff should know what happened and proceeded to articulate what A. Hloben alleged. Defendant Harster told Plaintiff that A. Hloben alleged that he made numerous threats to Philip Rogers, her paramour, and brandished a weapon towards her, Rogers and the Plaintiff's minor son, Michael Barrientez. Plaintiff insisted that what A. Hloben alleged was not truthful.

Defendant Griggs admits he heard Harster say two or three times to Plaintiff to stay on the ground.  Deputy Harster refused to relieve Plaintiff from the prone position and continued to keep him in the prone position.

Defendant Harster kicked Plaintiff approximately three to four times, causing his tooth and nose to become broken.  There was a notable amount of blood from Plaintiff's face and head area.  Plaintiff screamed out and attempted to move his body at which time Defendant Harster slammed his face to the ground and continued to kick Plaintiff, and then escalated the beating by kicking Plaintiff so hard it threw his head against a kitchen wall causing additional injury. Plaintiff was able to see Defendants Griggs, Waters, and Lehmann as Defendant Harster lifted him up.   Defendant Harster lifted Plaintiff off the ground by his arms and hand-cuffs.  Defendant Griggs was present when Plaintiff was lifted to his feet by Harster. All of the Defendants could see the notable amount of blood

streaming down Plaintiff's face. Defendant Griggs could see the damage to the kitchen wall.

**Standard of Review**

Pursuant to Fed.R.Civ.P. 56(a), a movant is entitled to summary judgment on a claim only if he has made a showing that "there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law." *See generally Van Wyhe v. Reisch,* 581 F.3d 639, 648 (8th Cir.2009); *Mason v. Correction Medical Services, Inc.,* 559 F.3d 880, 884–85 (8th Cir.2009). In applying this standard, the Court must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970); *Recio v. Creighton University,* 521 F.3d 934, 938 (8th Cir.2008) (citation omitted).

The inquiry performed is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). "The nonmoving party must show the existence of facts on the record which create a genuine issue." *Larson v. Kempker,* 414 F.3d 936, 939 (8th Cir.2005) (citing *Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir.1995)).

An "adverse party may not rely merely on allegations or denials, but must set out specific facts—by affidavits or other evidence—showing [a] genuine issue for trial." *Tweeton v. Frandrup,* 287 F. App'x 541, 541 (8th Cir.2008) (citing Fed.R.Civ.P. 56(e)).

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id*. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id*.

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when " 'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting

*Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine dispute of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods,* 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

In determining if a genuine issue of material fact is present, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, the Court must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

**Failure to Intervene**

Plaintiff seeks damages in Count V of the Third Amended Complaint for the alleged failure of Defendants Lehmann and Griggs to take reasonable steps to protect Plaintiff from the excessive force alleged against Defendants Harster and Waters. Lehmann and Griggs both seek summary judgment on this claim. Defendant Lehmann has submitted his deposition testimony and Defendant Griggs has submitted his affidavit in which both testify that they were not present when Defendant Harster administered force upon Plaintiff and did not witness the incident. Defendant Harster and Plaintiff both testified that the incident occurred quite fast.

An officer who fails to intervene to prevent a fellow officer's excessive use of force may be liable under" § 1983. *See Fogarty v. Gallegos,* 523 F.3d 1147, 1163 (10th Cir.2008). The duty of one officer to intervene arises when the officer witnesses a violation of a constitutional right by another law enforcement officer and fails to act despite opportunity to do so. *See Putman v. Gerloff,* 639 F.2d 415, 424 (8th Cir.1981). As Judge Webber of this Court has explained:

> A defendant can be liable for failure to intervene under two different theories. *Torres–Rivera v. O'Neill–Cancel,* 406 F.3d 43, 51–52 (1st Cir.2005). The first theory posits whether the officer was "indeed present at [Plaintiff's] arrest with an opportunity to prevent the excessive use of force." *Fogarty,* 523 F.3d at 1163. Alternatively, an officer can be liable where they are "instrumental in assisting the actual attacker or aggressor to place the victim in a vulnerable position." *Torres–Rivera,* 406 F.3d at 52. However, it is important to note that the officer must have a " 'realistic opportunity' to prevent the attack." *Id.* (quoting *Gaudreault v. Municipality of Salem,* 923 F.2d 203 (1st Cir.1990)).

*Rohrbough v. Hall,* No. 4:07CV00996 ERW, 2008 WL 4722742 (E.D.Mo.2008). Thus, to prevail on a "failure to intervene" claim at trial, Plaintiff must eventually show that these Defendants either had an opportunity to intervene or were instrumental in any seizure or use of excessive force.

The facts give no indication that Defendants touched Plaintiff or that they were instrumental in his being restrained. Defendants state that, even if the restraint was unlawful, the facts do not support a finding that they had a realistic opportunity to intervene. Though Plaintiff argues that there is a question of fact as to whether Defendants had such an opportunity, he points to no fact or argument

indicating that such an opportunity existed.  If the party with the burden of proof at trial is unable to present evidence to establish an essential element of that party's claim, summary judgment on the claim is appropriate because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Plaintiff cannot meet his burden on the failure to intervene claim regarding the restraint.  Defendants are entitled to summary judgment on this claim.

## Battery/Excessive Force-Defendant Waters

Defendant Waters moves for summary judgment on Plaintiff's battery and excessive force claim.  Count VIII of Plaintiff's Third Amended Complaint alleges battery under Missouri state law, and notes in the caption that this claim is "also cognizable under 42 U.S.C. § 1983."   The record before the Court establishes that Defendant Waters is entitled to summary judgment on this claim.

Defendant Waters was told by Plaintiff's former wife and her then boyfriend that Plaintiff had "flipped out" during a custody exchange.  Defendant was also told that Plaintiff had threatened to shoot the boyfriend and that Plaintiff had gone to the trunk of his car, retrieved a 22 rifle and pointed the gun at the car in which Plaintiff's son was sitting.  When Defendant entered Plaintiff's apartment, she drew her gun and placed Plaintiff in the prone position.   Plaintiff admits that

[11]

Defendant Waters never physically injured him and that she was very nice and accommodating.

Claims that law enforcement officers have used excessive force in the course of an arrest should be analyzed under the Fourth Amendment and its reasonableness standard." *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Clark v. Ware,* 873 F. Supp. 2d 1117, 1119 (E.D. Mo. 2012). Additionally, under Missouri law, the standard for determining whether a private individual is liable for assault and battery is different from the standard for determining whether a law enforcement officer is liable for assault and battery. *Washington v. Drug Enforcement Admin.,* 183 F.3d 868, 874 (8th Cir.1999). In the course of an arrest made with or without a warrant, a law enforcement officer is only liable for assault and battery if he or she uses "more force than is reasonably necessary." *Neal v. Helbling,* 726 S.W.2d 483, 487 (Mo.Ct.App.1987). The plaintiff has the burden of proving unreasonable force. *Id.* (noting that "a plaintiff asserting that he was battered in the course of an arrest must prove that the officer used unreasonable force in effecting it"). *Holtgreven v. O'Fallon Police Dep't*, No. 408CV00553 ERW, 2009 WL 2032164, at *11 (E.D. Mo. July 8, 2009). Plaintiff has produced no evidence whatsoever that Defendant Waters' actions fell outside of this standard; Defendant Waters, in maintaining her safety based upon what she knew of the situation, used only that force as was necessary in placing Plaintiff in a

prone position. Defendant Waters is entitled to summary judgment as to Count VIII.

## False Arrest-Harster and Waters

In Count III, Plaintiff alleges that Defendants Harster and Waters violated his rights under the Fourth and Fourteenth Amendments through false arrest. Plaintiff claims that Harster and Waters subjected him to an illegal search and seizure by placing him under arrest without probable cause, transporting him in police custody, deposited him at the Jefferson County Jail knowing that he would be searched there and causing him to be searched without warrant, probable cause or justification. Defendants contend, *inter* alia, that they are entitled to qualified immunity.[1] Defendants are entitled to summary judgment on this claim.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). "We analyze qualified immunity in two steps: (1) whether the facts that a plaintiff has alleged … make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the

---

[1] Defendants argue that the fact that Plaintiff was convicted of the crime of unlawfully using a firearm is conclusive proof that probable cause existed. Plaintiff argues that because the execution of his sentence was suspended, there has been no "conviction." While the Court disagrees with Plaintiff's argument because the authority upon which Plaintiff relies analyzes the issue in relation to impeachment, the Court need not address this argument because Defendants are entitled to qualified immunity.

time of [the] defendant's alleged misconduct." *Peterson v. Kopp,* 754 F.3d 594, 598 (8th Cir.2014) (alteration in original) (quotation omitted). Government officials are entitled to qualified immunity "[u]nless both of these questions are answered affirmatively." *Nord v. Walsh County,* 757 F.3d 734, 738 (8th Cir.2014). In addition, Courts are "permitted to exercise [their] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson,* 555 U.S. at 236.

Defendants are entitled to qualified immunity because there was probable cause, or at least arguable probable cause, to arrest and transport him to jail. Because Defendants had probable cause to arrest, then Plaintiff has failed to "make out a violation of a constitutional right" in the first instance.

"Probable cause exists when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Peterson,* 754 F.3d at 598 (quotation omitted). But a police officer need only have "arguable probable cause" to make the arrest in order to receive qualified immunity. *Id.* "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based on probable cause if the mistake is objectively reasonable." *Id.* (quotation omitted). Though the probable-cause standard allows room for reasonable mistakes by a reasonable person, the qualified-immunity standard "'protect[s] all but the plainly

incompetent or those who knowingly violate the law.'" *Ulrich v. Pope County,* 715 F.3d 1054, 1059 (8th Cir.2013) (quoting *Hunter v. Bryant,* 502 U.S. 224, 229 (1991)). See also *Greenman v. Jessen*, 787 F.3d 882, 887-88 (8th Cir. 2015)

"[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates,* 462 U.S. 213, 232 (1983). "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." *Brinegar v. United States,* 338 U.S. 160, 175 (1949) (internal quotation omitted). A "reasonable ground for belief" means "more than bare suspicion," but "less than evidence which would justify condemnation or conviction." *Id.* (internal quotations omitted). "Probable cause exists where the facts and circumstances within … the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id.* at 175–76 (internal quotation and brackets omitted); *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010).

The information available to these Defendants at the time clearly gives rise to the existence of probable cause, and certainly arguable probable cause. The officers were summoned to Plaintiff's apartment by his former spouse. She advised Waters that Plaintiff was brandishing a .22 caliber rifle and making

[15]

statements about shooting her boyfriend. Plaintiff's son told Waters that his father had a gun and he was yelling. These facts are "sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Brinegar, a*t 175–76. Defendant's motion will be granted.

## Conclusion

Based upon the foregoing analysis, Defendants are entitled to judgment as a matter of law on the grounds set forth in their respective motions.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Shaun Griggs' Motion for Summary Judgment, [Doc. No. 95], is grated.

**IT IS FURTHER ORDERED** that Defendants Waters, Lehmann and Harster's Motion for Partial Summary Judgment, [Doc. No. 97], is granted.

**IT IS FURTHER ORDERED** that judgment shall be entered accordingly upon the resolution of the remaining claims in this matter.

Dated this 10th day of March, 2016.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE